Watson, will you call our next case, please? All right. Will counsel on People v. Massey please approach? Your Honor, Nicholas Curran on behalf of Clint Massey. All right. And Mr. Curran, how much time would you like? Fifteen minutes with five reserved for rebuttal. Okay. Fifteen. Fifteen. All right. Mr. Curran, whenever you're ready. Thank you, Your Honor. May it please the Court. Again, as I stated, my name is Nicholas Curran, and I represent the defendant appellant, Clint Massey. There are two issues in this appeal that I would like to argue before the Court this morning. The first corresponds with the first issue we raised in the brief, which relates to Mr. Massey being denied effective assistance of trial counsel by virtue of various acts and omissions committed by his attorney both before and during trial. Now, the essence of our ineffective assistance claim is that, based on the evidence, Mr. Massey's attorney failed to present the only viable defense that was available to him, which is that although the defendant was present at the scene at the time of the shooting, it was his co-defendant, Courtney Ely, who committed the shooting, and that Mr. Massey was not accountable for Mr. Ely's actions. So trial counsel presented an identity defense, basically just, jury, my client is not guilty because he was not present at the scene. All of the state's witnesses that testified to the contrary or made statements before trial were not credible or believable for whatever reason. The problem is that that defense was completely unreasonable. You had every single witness who testified on behalf of the state, who was a witness to the occurrence, either testified at trial or told police before trial, gave a handwritten statement, that Mr. Ely and Mr. Massey approached the victim's car shortly before the shooting occurred. Not only that, you have surveillance video, which corroborated the sequence of events to which those witnesses testified and or told police before trial, that being a procession of three vehicles passing before the victim's car and then about a minute later returning, two individuals approaching the car, and then the shooting occurred. So why isn't it a strategic decision? It may be a decision that defense counsel thought was strategic, but the measure of effectiveness It was unreasonable. Why was it unreasonable? It was unreasonable because of the overwhelming evidence that Courtney Ely and Clint Massey were present at the scene at the time of the shooting. But wasn't he taking his chances either way? Because otherwise he'd be right at the scene, right? Correct. And it wasn't clear who may have had the gun. No one testified they saw anyone with a gun. There was testimony by one of the witnesses that somebody shot, thought he might have shot, but it wasn't clear whether he did see a gun. No one saw a gun. Correct, Your Honor. So this was all about defense counsel putting the state's case to, subjecting it to adversarial testing. And based on the irrefutable evidence that those two individuals were present at the scene at the time of the shooting, arguing, well, my client wasn't there, if anything, I believe, enhanced the appearance of his guilt in the eyes of the jury. Why would he deny that he was there if he did not share in the intent with whoever it was that committed the shooting to actually perpetrate the shooting? To deny the obvious, I think only it would have enhanced his guilt in the eyes of the jury. Now, in fact, there was a substantial amount of evidence that trial counsel could have pointed to to argue that Courtney Ely was the shooter and that his client was not accountable. So Courtney Ely is the one who received the phone call after the fight at a party that preceded the shooting. The apologist said there was no evidence of that. And I can't speak to his recollection of the evidence or his reading of the record? No, we had juries that were determining what the evidence was, what the likely scenario was, right? Well, we had direct testimony from Caprice Johns, who was in a car with Jasmine Brown, that Tay, who was later identified as Germontay Carpenter, after that group left the party, they placed a phone call, and it was on speaker in their car, and the person who picked up the phone was Courtney Ely, not Clint Massey. So Ely had a conversation with those individuals, and then it's Courtney Ely who leaves physical evidence at the scene. He's the one whose cell phone is left in the middle of the street at the scene of the shooting, which I would argue is consistent with the idea of perhaps him pulling out a firearm, his phone falling out as he's doing so. Courtney Ely, we know, is handling the victim's vehicle, based on him having left a fingerprint on the passenger side window of the victim's car. And then you have Mr. Ely, above and beyond that, returning to the scene in an effort to recover his cell phone, which I believe is an indicator of him trying to avoid detection or cover up his connection to the crime scene, which an inference from that, I believe, is that he has a guilty state of mind. Now, I'm not claiming that that would have been an easy road to hoe for defense counsel, but it would have been far more viable a defense than to simply argue, well, these witnesses are not credible. Courtney Ely would have been an easier strategy. It would have been a much more viable strategy, based on the evidence at the scene. I mean, when you have such overwhelming evidence that Mr. Massey is present at the scene, in your defense it's, well, he wasn't there, and therefore he's not guilty. Well, he didn't argue only that. His lawyer said, as Mr. Mulligan pointed out during the earlier argument, that Caprice Johns was all over the place, that she told four different stories, only one of which implicated Ely, and that it was really this group of women, it was their plan to go and exact revenge. And then they laid it on Ely and Massey to try and avoid criminal charges against them. And so, you know, when you don't have the best evidence in your defense, why isn't that a reasonable strategy to say that you shouldn't believe any of these state witnesses because they were all in on this plan? The problem with that argument in this particular situation is not only do you have the witness's testimony, but you also have the physical evidence, which irrefutably establishes Mr. Ely and, by extension, Mr. Massey's presence at the crime scene. And, in fact, you know, if you look at one of the other parts of this, is the witnesses testified that Mr. Massey was wearing a distinct article of clothing, a brightly orange and black striped jumpsuit. And it's hard to make it out in the surveillance video, but it does appear as though somebody wearing something approximating what the witnesses described does approach the victim's vehicle along with Mr. Ely before the shooting occurs. So what it sounds like then, since you're saying his best defense would have been to say Ely was the sole shooter that he should have mounted a defense that was antagonistic to Ely and asked for severance, which he did. But in asking for severance, he didn't say, you know, our defenses are antagonistic because I'm going to point the finger at him. He said, oh, there's some incriminating statements. Well, they were incriminating statements that Ely made about himself. So the motion for severance was denied. So just to clarify, and this is part of the argument here that Mr. Massey's attorney was kind of asleep at the switch. Mr. Massey's attorney never filed a motion for severance. I'm sorry. It was Mr. Ely. And it's confusing because you have the two of them together. But what he did, what added to that confusion, though, is that in his post-trial motion, one of his claims was that the trial court failed to grant a motion for severance, which he had never filed. I suppose trying to jump off of Mr. Ely's counsel's motion that she had filed before trial. But he knew about the motion because when he came into court late, the judge explained to him what had occurred when he was absent, and he didn't ask to make a motion himself. I think that may be true. Certainly, I think the best practice is if you're going to adopt a motion for severance. He didn't say anything. Right, to make that very clear on the record and to file your own written motion, which Mr. Massey's attorney never did. But if you play this out, you can see how it's prejudicial because if they're being tried simultaneously, they can't point the finger at each other. Right. And why couldn't Mr. Massey's attorney have believed that since this jury was only asked to find first-degree murder as to both defendants, that he had a better chance of an acquittal for his client because he had one witness saying, Ely was the shooter, and if Ely's the shooter, maybe I get off. Your Honor, I think that that is a valid strategy. However, in order to effectuate that strategy, he needed to separate himself from Ely, which he never did. All he did was he put his stake in the ground on this notion that you can't believe the state's position that my client was at the trial. And so, you know, the obvious defense in this case is you have Mr. Ely's phone at the scene. You have his fingerprint on the victim's car. Mr. – if you look at the surveillance video, it's difficult to make out, but I think you can argue that it appears that Mr. Ely is the one firing a weapon. Right. You had the phone call. The jury didn't find that since he got the charge of extra years for having the gun. My understanding is that both – In the – I thought in the briefs it said that – So Mr. Massey, I believe, was – he was – the jury found that he was in possession of a firearm. Right. They were not asked to make a determination as to whether or not he had personally discharged a firearm. And, again, this also goes to – just briefly to touch on this, and I know some of this is treading over ground, Your Honor, has already been over, but the most reasonable inference to draw from the ballistics evidence is that there was a single shooter, that there was only one gun involved. Because you have three shell casings that were recovered that were all fired from the same firearm. You have two bullets found in the floor of the victim's driver's side vehicle that all were fired from the same firearm. Excuse me. You had two bullets that were recovered from the victim during the autopsy that were both fired from the same firearm. They said they were all 9 millimeter, but they could have – and they couldn't say whether it was a revolver or a semi-automatic. That's true, Your Honor. I think my understanding of the ballistics testimony, and the State can correct me if I'm wrong, was that they were able to determine that the bullets recovered from the victim were fired from the same firearm as the bullets recovered from the vehicle. So there were four bullets total that were all fired from the same firearm. So the only other way you could have had another firearm used in the commission of this offense is if, from a few feet away, someone fired a different weapon and there was no bullet found, either in the victim or in the vehicle. I mean, I suppose it could have happened. You can't rule it out. But the most reasonable inference to draw from all of this, I would submit, is that a single firearm was used in the commission of this offense. So here's the choice faced by Mr. Massey's defense counsel. Either he sticks with Mr. Ely and they're tried together, and he hopes that the jury's not going to be able to figure out who the shooter was, and he gets off, or he says to the judge, you know what, I'm going to argue that Ely was the sole shooter, so you have to sever us. My defense is going to be antagonistic to his. You have to sever us. And in his trial, then, the jury sees all this evidence, and his argument to that jury is, it was that other guy, not me. And can't a reasonable defense attorney say, you know what, I have a better chance of an acquittal by sitting next to Ely and having this jury confused than being sitting there by myself at defense table and having them have to say, not guilty when he's standing next to the car in his Tiger Strike jumpsuit and we can see a flash? I just don't understand how that's not a reasonable decision that a defense lawyer can make. Well, he never presented that argument to the jury. He never argued, my client is not guilty, Clint Massey, or excuse me, Courtney Ely is. Right. And had he told the trial judge that that is going to be my argument, he would have had to sever the case. Correct. Right? Correct. So he, sitting there before trial, says to himself, this is a grainy video. Yeah, my client's probably there, but Caprice Johns says it was Ely. Ely's on the phone. Ely dropped his cell phone there. If I just stick with him, this jury might think I happen to be standing there and find him guilty of first-degree murder. Whereas, if I'm the sole defendant, this jury has a choice between acquitting just me or finding me guilty as I'm standing next to the car and this guy is dead in it. Well, I don't, my view on this is that doing it in the manner he did it, without severing the cases, did not advance his efforts to try to pin it on. But, you know, the game is played on Sunday. You're the Monday morning quarterback. That's fair. That's fair. That's always the position. Well, duh, you know. Yeah. And I agree with that. But I still think that. And when presented with not that much to work with, this lawyer made decisions that were strategic decisions that he believed were in the best interest of trying to get this defendant off. Well, Your Honor, so there are a couple things I would say to that. Simply because somebody believes that what they're doing is reasonably sound or strategic does not make it immune from challenge. It is an objective standard. Understood. So then give us the prejudice part of it. So the prejudice is there are a couple things. One is, and this is something that was alluded to in the prior argument, you have a statement by Courtney Ely after the shooting occurs where he is conversing with Jasmine Brown, where he's relating what happened. And he says to her, after they went up to the victim's vehicle, somebody asked him where the victim was from. He said, right here. And then it was manned down. And the state utilized that statement during closing argument to argue, suggest a motive, that it was retaliation, that it was related to neighborhood conflict, and that was one of the impetus for the shooting. That statement was not admissible as to Clint Massey. If they're having separate trials, that statement does not come in because it's double hearsay, because it's Jasmine Brown testifying to what Courtney Ely told her out of court that was said at the victim's vehicle immediately before the shooting. So that does not, that's a statement that's admissible as to Courtney Ely, but not as to Clint Massey. The other thing then, though, is during closing. But then it goes to a motion to sever, right? Correct. And my question was, couldn't a reasonable defense attorney before trial have said, I have a better chance of getting my client off with all this stuff about Ely that the jury's going to hear? They may just say, he's the bad guy, not Massey. But he never made that argument. He couldn't. But he wanted that opportunity. He wanted the jury to have that opportunity with Ely sitting there to say, we've got two people charged with murder. Here's all the evidence we heard about this guy. Let's pick him. Let's let him off. Whereas, if he's the only one sitting at the defense table, his lawyer might have said, they're not going to be told about anybody else, but they're going to hear all this evidence about this shooting, and they're going to see the video of Massey standing right there, and they're going to find him guilty. So I don't think any of the evidence that was favorable to Clint Massey in this vein would not have been admissible at his trial had the cases been severed. So all of the same evidence as to Courtney Ely's guilt, involvement in the shooting, would have been admissible had the cases been severed. Right. But at the same time, that enables the jury then, where it's just Mr. Massey sitting there, they don't know what happened to Courtney Ely, they don't know anything about him, and the jury is asked to decide, is this man, the only man sitting in front of you, guilty? And their choice is, do we find him not guilty, do we find him guilty? And it just seems to me that an experienced criminal defense lawyer would not want to be the only one sitting there. So Your Honor is suggesting that the jury would have convicted him just because they wanted to hold somebody accountable, not knowing if anybody would be? The jury would have convicted him because there was sufficient evidence to convict him. Certainly, and I'm not disputing that. But what I'm arguing is that his attorney sacrificed the only viable defense in the case, which was to argue, Ely did it, my client did not, and there's no evidence that he was accountable. And because the cases were not severed, because he didn't file a motion for severance, although he said the court should have granted one afterwards, he sacrificed his ability to do that. Very briefly, because I am running out of time, I did want to touch on the last issue that we raised in the brief, which is kind of an interesting one. So shortly before trial, Caprice Johns, a witness in the case, the state had been looking for her. They had issued subpoenas, tried to serve her with those. They were never able to locate her. Why shouldn't that be something for post later on? Because there are different factual basis for that that aren't in the record. You cited an opinion which we could look at, but there are other questions that are raised by the situation as to what was going on during the few weeks before she testified. So in my view, the only question is whether or not they actually received notice of the hearing. And there's no evidence that the notice and the motion that was filed that's part of the common law record does not indicate that Mr. Massey and Mr. Ely were served with a copy of the motion or notice of the hearing. So I don't know how else we prove a negative other than, I suppose, to have an affidavit from counsel verifying that he never received notice. But notice under the law has to be established by the party upon whose burden it is to serve notice. And in this case, the state didn't do that. And as a result, you know, you have a situation where Caprice Johns, you have a trial judge who says, well, I'm going to hold you without bail because even though I believe you want to show up, I'm worried that you're going to be extradited to Indiana if I let you go. And then what the state does is they argue during closing, you know, to bolster Caprice Johns' credibility, look at how much she wanted to be here. She's in a black and white striped suit. She's incarcerated. You know, that's how much she didn't want to come in and testify against her friends. That was completely untrue. Yeah, but the record is unclear because there's an exchange between Ms. Johns and the court apologizing for her conduct, right? And we don't know, I don't think it's reflected in the record, that she wasn't in custody because she was held in contempt. Well, the order was to hold her without bond pursuant to the state's motion. And that is what the state. And that was reversed. And it was reversed, exactly, because the trial court didn't follow statutory procedures. Right, so we don't know why she was still in custody when she testified. She was angry because she was being held without bond because, without being given the opportunity to sign a written undertaking and post a personal recognizance bond, she was just incarcerated. And so she had an outburst. So in addition to being held without bond pursuant to the state's motion, she was also held in contempt of court. So in any event, I know that my time is running short. So we would ask that, for all the reasons stated in the brief and here today, that the court reverse Mr. Massey's conviction. Thank you. Thank you, Mr. Kern. We'll give you time for rebuttal. And Mr. Pibovarczyk. Good morning again. Choice of strategy is virtually unchallengeable. It's all too easy to second-guess a strategy after it has failed. That's why it's necessary for the defendant to show that the strategy was irrational, not just that it was a more viable strategy or a more valid strategy with hindsight. Well, Mr. Kern seems to suggest that it was irrational for defense counsel to argue to this jury that my client wasn't there. This is a mistaken identity. And that's incorrect, Your Honor, because it was not a foregone conclusion that these witnesses would be believed by this jury. There were absolutely stories that changed repeatedly with all of these witnesses. And what was necessary in order for this, for Massey to be proven guilty, beyond a reasonable doubt, what was necessary was for the jury to believe the accusations of Herbert, Brown, and Johns. I want to talk about the physical evidence because it's been referred to here as irrefutable. It's a fingerprint. And it's not even a fingerprint for Massey. It's a fingerprint for Ely. There's no physical evidence connecting trial counsel's client to the crime scene. And there's one fingerprint on the window of a car connecting co-defendant to the crime scene. This discussion about the co-defendant leaving the cell phone at the scene, that's not, that doesn't actually, that cell phone was remotely wiped. That cell phone was remotely wiped. There was nothing gotten from that cell phone except for the actual cell phone number. And that information was handled in a motion in limine. It was not presented to the jury. There was no fingerprints on that cell phone. There was no DNA on that cell phone. What that cell phone was was corroboration of the eyewitnesses because you had one victim at that crime scene and two cell phones at that crime scene. So when you have witnesses saying that one of the shooters left the phone behind and there's an extra phone there, that's corroboration. But you still have to rely on the finding of credibility of the witnesses to be able to get there. The only independent physical evidence is one fingerprint of a co-defendant on the exterior of the victim's vehicle. That's the so-called irrefutable evidence. Everything else. Well, there's a video that appears, it's gritty and it's hard, but it does appear somebody has clothing on that's similar to what the defendant was wearing at the party. That's true, Your Honor. But once again, the video can be viewed in conjunction with eyewitness testimony and corroborate what the eyewitness is saying, but that video alone proves nothing. That video alone is incredibly grainy and it's only through credible testimony of eyewitnesses that that video can be converted into something that a jury can understand and accept. And that's what Herbert, Brown, and Johns did. That's what juries are supposed to do. The fact finder here evaluated the credibility, decided whether or not to believe their accusations or to believe the many arguments that were made by both defense attorneys about why they shouldn't be believed. They chose to believe them, and that was absolutely appropriate. But it was not a foregone conclusion. It absolutely was not a foregone conclusion. The jury was instructed about accomplice testimony, and on cross-examination of all of these witnesses, the defense attorneys explored the culpability of each of these witnesses. And then the jury was instructed that accomplice testimony should be considered with caution. So this was not a foregone conclusion. It was absolutely, the identity defense was absolutely the best chance that this defendant, Defendant Massey, had for acquittal. It's only with hindsight, once they've been found credible, that anyone can suggest that they should have conceded that he was present at the murder scene. Now keep in mind, what we're talking about here is not, when you argue identity, you're not conceding mere presence. Everything that was argued, everything that was argued did not concede any of the elements of the offense. Based on that, there can't be prejudice because of the fact that the jury still has to decide each of those elements. The jury has to decide whether or not he was either the shooter or accountable or merely present. With regard to severance, the fact that this was a joint trial gave the jury someone else to blame. And certainly, Defendant Massey sitting at counsel table next to Defendant Ely would look less guilty in that context by comparison. That's a valid strategy. And with regard to severance, there is no prejudice because absolutely every single piece of evidence that was introduced at this joint trial would have been introduced against Massey in a separate trial. The statements that Ely made to Johns and Brown, those were co-conspirator statements. Those would absolutely have been admissible. Now, the real question is, why would the attorney for Massey even want to keep it out? Whether it's a joint trial or a separate trial, why would trial counsel here want to keep out a statement where co-defendant Ely blames himself? That's all he does. He describes himself as taking the lead here. He tells Brown and Johns, who both, by the way, both testified concerning this statement. So it's testified to both of them that he asked the question that decided the victim's fate. Massey is entirely absent and unmentioned in that statement. That's great evidence of mere presence. And there would be no reason for defense counsel to want to keep that out either way. But if he were, there's still no prejudice because co-conspirator exception allows this statement in because it was made during the course of the conspiracy, because efforts to escape punishment are absolutely... Well, you keep talking about conspiracy. Where's the evidence of a conspiracy? I mean, I don't see anything in the record about conspiracy. Well, a conspiracy doesn't have to, you know, it doesn't have to be a group of people meeting in a locked room conspiring. But we're talking about a hearsay rule. Yes. And an exception. I don't see any evidence that there was a conspiracy. There's a common criminal design here, Your Honor. And there's circumstantial evidence that establishes the fact that this was a shared plan to retaliate from... What was the evidence it was a shared plan? The evidence of the shared plan is the sequence of events. The fact that Ely and Massey are in the lead car. They lead a caravan of three vehicles from 55th Street where they met with two of the eyewitnesses, Johns and Brown, who were upset about what had happened at Wentworth Gardens at a party there where there were shots fired. They call these two individuals, Ely and Massey, who are together. They decide to meet at this Wendy's on 55th Street. They all meet there. They proceed in a caravan with Ely and Massey in the lead vehicle. They drive back to 37th Street to Wentworth Gardens, and then they both get out of the lead vehicle together. They both approach the passenger side of the victim's vehicle together. We know this both from the testimony of the eyewitnesses who are in different vehicles behind them in the caravan, but also from the CHA video. They both approach the passenger side. And then in the video, you absolutely see the vehicle pull back and then pull forward. And what you have is a shooting. You have the door opening. You have two individuals, Defendant Ely and Defendant Massey, standing in front of the open passenger door of the vehicle when the victim is shot four times. Then immediately after that, both Ely and Massey both go back to the lead car, and then this whole caravan returns to where they came. They leave 37th. They go back to 55th Street. They go back to a gas station at 55th Street. This absolutely shows that there was a plan here. There was absolutely a shared intent to commit a criminal act, criminal retaliation. And what you see after the gas station is additional evidence of the fact that there was a common criminal design. And what that is is attempts to conceal and attempts to avoid punishment and avoid being caught. And that's when Johns and Brown and Defendant Ely work together to try to retrieve incriminating evidence from a crime scene and end up lying to the police. We don't know where Massey went. We don't know where Massey went after they went from 37th Street to 55th Street. Yes. But all of that is circumstantial evidence of the common criminal design. And based off of that, it's certainly clear that there is a conspiracy here. And the co-defendant, when he is seeking help to get that cell phone back from that crime scene where he and Massey did the shooting. Massey didn't have anything to do with getting that phone back. He didn't leave his phone there. There's nothing to say that he was involved in that at all. No. They split up at that point. Right. But it's representative of this caravan of people who are upset about the shooting at the party doing something about it, going back to retaliate with violence. So Mr. Curran's other issue is the holding Johns as a material witness without notice to his client. There's two steps to that inquiry. And the first one is whether or not there was actually a violation. And there wasn't a violation of the right to be present in this case because it's not a critical stage for the defendant. The defendant, at this material witness bond hearing, he didn't have a role. There was nothing that he had to do. Like, his rights were not implicated. He had no standing to object on behalf of Johns, who was an eyewitness against him in a homicide case. So this doesn't fall into that definition of a critical stage. His absence didn't deprive him of a substantial constitutional right. And McDonald, which is cited in my brief, states that under normal circumstances, a material witness bond hearing is not a critical stage. In that case, both parties agreed that it was a critical stage, so the court in McDonald immediately went to the question of whether or not there was prejudice, which is also a problem for the defendant in this case because he can't show prejudice. What his argument is on prejudice is that his attorney did not object to one thing that was said in rebuttal argument that was entirely accurate. And if Your Honors will just allow me for one second, I want to give a little bit of context to that statement that was discussed. Because Ely's attorney, in his closing argument, told the jury that Johns testified in prison stripes for contempt of court. Excuse me one second. Take your time. Thank you. Thank you very much. So Ely's attorney, in closing argument, told the jury that Johns testified in prison stripes for contempt of court because it's hard to tell the same lie twice. That's at I.I. 15 to 16 in the report of proceedings. The people's response in rebuttal was, actually, Johns testified in prison stripes for contempt of court because it's hard to tell the truth when it incriminates your friends. That was an absolutely appropriate response and a reasonable inference based on the evidence, and it certainly wasn't a misrepresentation. And I want to point out that Johns admitted that she did not want to be testifying against her friends, and she admitted that she didn't want to come to court. That's at F.F. 292 to 293. So there's no need to draw the conclusion that she didn't want to be testifying against Ely and Massey from the fact that she's in custody. She comes out and says it. In addition, it's absolutely true that the record shows that Johns did risk going to jail to avoid testifying against her friends. All of those expressions of willingness to come to court that Johns made, those were all made after she was in custody. Before she was in custody, she was hiding from subpoena service for seven months in what the trial court called one of the most comprehensive searches for witnesses that I have ever heard. So when she finally did come to court, she was in custody. She was in custody for several reasons. As opposing counsel acknowledged, she was in custody for contempt of court. So that statement in closing argument by the prosecutor was absolutely correct. She was in custody for contempt of court. And she was in custody for contempt of court because she didn't want to come to court. The details of it, the details of how that played out were not presented to the jury because the material witness facts were not presented to the jury. And I would argue that no reasonable defense attorney would want their jury told that a particular witness was certified as a material witness. That would bolster the witness. That would create the appearance of judicial imprimatur on this particular witness. So the fact that there was a material witness certification of Johns was not mentioned. And what's important is that without getting into those circumstances, the prosecutor made a completely accurate statement about why she was in custody and what inferences could be drawn from that and was really just commenting on things that were directly testified to by Johns. So based off that, there was absolutely no reason to object. If I may, I would just ask to make one last point with regard to the first issue with regard to the arguments and choice of strategy. And I want to point out that as Your Honors acknowledged, the attorney for Massey couldn't point the finger directly at Ely. He couldn't blame Ely explicitly, but he still benefited from the fact that Ely was next to him looking more guilty and giving somebody to the jury to blame. And that is absolutely, when you look at the closing arguments for Massey, that's absolutely something that Massey uses in that joint trial to his advantage. He says, he tells the jury, of those three eyewitnesses, did any of them point to my client and say he was the shooter? Did any of them point to my client and say he was in the orange outfit that day? None. So as far as it was possible, there was the opportunity and it was taken in order to be able to blame Ely while still having all the benefits of challenging the credibility of these witnesses. If there are no more questions for these reasons and for those in our brief, the people ask that you affirm the defendant's conviction and sentence. Thank you. And Mr. Kern. Your Honor, may it please the Court, there are a couple of things the State represented here that are just flatly untrue. There was absolutely no evidence that Caprice Johns was avoiding service. She was homeless. She did not have a fixed place of residence. The State was simply unable to locate her. And when she was brought in front of the trial court pursuant to the material witness hearing, she became upset when the court ordered her held without bond simply because it was concerned that she would be extradited to Indiana. So what about Mr. Dvobarczyk's point that let's assume he got notice. What are you going to argue at the hearing? So that would have enabled – it's not a matter of – so there are a couple of things. First, we're not arguing that this was a critical stage and by virtue of him having not received notice or being present, that alone is enough to reverse his conviction. That's not what we're arguing. What we're arguing is that if counsel had received notice of the hearing and was present for the hearing, he would have been able to object to the State's knowingly false – and I will stand by that – knowingly false argument during closing where the State said Caprice got on the stand. Remember how much she wanted to be here. She wanted to be here so much that she was in a black and white striped suit. She was in custody. She decided that she would rather not come to court and be in contempt of court than to walk into this courtroom and point out her friends that she was at a party with and say, you know what, yeah, I saw C. Day. He was shooting a gun and Rondo over here was right next to him and they were doing it together. Caprice Johns was not in custody because she said, I'm not going to show up. In fact, the opposite is true. She said, I will show up and I will sign a written undertaking to appear in court, but the trial court said, I'm not going to let you do that because I'm concerned that you're going to be extradited  That was a blatantly false misrepresentation to the jury, and if trial counsel had been present for the material witness hearing, he would have been able to object and say that's an improper argument because that's not at all why she is in custody. Secondly, in terms of, again, this idea that Mr. Massey benefited by having Mr. Ely next to him, we have two juries in this case. One, the jury that is assigned to Mr. Massey's case doesn't know that Mr. Ely is going to be convicted, so they would be in the exact same position they would be if the cases were separated. The difference is, though, that there would have been prejudicial evidence against Mr. Massey that was inadmissible as to him that would not have been admitted at his trial. Now, this statement that Mr. Ely made to Jasmine Brown and Caprice Johns is not a statement of a co-conspirator. The Kleiner case, which is an Illinois Supreme Court case which we signed in our brief, states that the co-conspirator hearsay exception does not extend to a statement which is merely a narrative of past occurrences and which does not further any objective of the conspiracy. But as I recall, Massey's counsel did not object to the admission. He did not. He should have. I don't know why he – well, I mean, because the statement technically, I guess, was admissible as to Mr. Ely, but it was not admissible as to Mr. Massey. Mr. Massey was not present when that statement was made. He did not assent to it. And the statement itself is not part of an effort to further any objective of the conspiracy or to conceal the crime. It's just a statement explaining what happened. But, again, it points the finger at the guy sitting next to him at the fence table. It doesn't because the statement doesn't say who fired shots. No, but it, you know, when Ely comes back and he says, I asked him, you from over here, and he said yes, and then it's man down. And the description was he's kind of bragging about it. So how doesn't that help Mr. Massey? So what's really telling is that if you go to closing argument, the state argued it, it treated Mr. Massey and Mr. Ely as one person. And in arguing that statement, using that statement in closing, it said as they're watching the surveillance video, the prosecutor has the surveillance video playing, and he says, remember what Ely said, where are you from? He says here. They've heard an answer, and they go into what they came here to do, to hurt somebody, to kill somebody who was from that neighborhood. So the state's using this out-of-court statement by Mr. Ely that's not admissible as to Mr. Massey to argue that they're both guilty. And it's clearly not admissible as to Mr. Massey. Now, whether ultimately this court holds that it's not prejudicial, I think that it is, but it's clearly not admissible as to Mr. Massey and his attorney erred in not objecting to it. And, again, this goes back to the whole issue with the severance, because if we're having separate trials, I don't know if the state tries to get in that statement, but if they do, it's clear then at that point that it's not admissible because Mr. Massey is on trial, not Mr. Ely. The last point I'll make is, you know, again, when you have the blending of these two defendants together, it just creates confusion. So what Mr. Ely's attorney argued during closing is, well, even a more interesting thing is then you have Caprice. Caprice says she never saw who shot. Jasmine says she heard two shots. She didn't see who shot. Takiyah says, well, I saw Rondo shot. That's referring to Mr. Massey. This just doesn't make any sense. Not a single one single witness took that stand and said Courtney Ely shot a weapon. That's not true. It's not true. Caprice Johns testified that, in fact, she observed Mr. Ely fire the weapon and shoot the victim. She said he shot that dude. That's what she testified to. So by process of elimination, you know, you've got somebody else in addition to the state, another attorney getting up in front of the jury and arguing the case and saying, well, nobody said my client shot. There was a witness who said Mr. Massey shot, but nobody said my client shot. So now you have Mr. Massey who's not only arguing against the state's case, but in effect is also arguing against Mr. Ely's case. So I think that's probably a good place to close. And, again, we just ask that this court reverse the conviction. Thank you very much. All right. Thank you both very much for your arguments here today and your briefs. We will take the matter under consideration and stand in recess.